IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

LANETTE SPENCER,                        )
                                        )
    Plaintiff,                          )
                                        )
VS.                                     )       CASE NO. _____
                                        )
TENNESSEE STATE VETERANS' HOMES,        )
                                        )
    Defendant.                          )

## COMPLAINT

JURISDICTION:

1. This Honorable Court has jurisdiction of Plaintiff's FMLA claims pursuant to 29 U.S.C. §2617(a)(2).

VENUE:

2. This Honorable Court has venue of this action pursuant to 28 U.S.C. §1391(a)(2) because Plaintiff resides in this District at 3402 Dutton Court, Murfreesboro, Rutherford County, Tennessee.

3. Defendant operates a long-term residential healthcare facility in Murfreesboro, Rutherford County, Tennessee.

THE PARTIES:

4. The Plaintiff is a citizen and resident of Rutherford County, Tennessee, and has been at times pertinent to the facts of this cause.

1

5. On information and belief, Plaintiff submits that Defendant is a Tennessee State agency.

## FACTS:

6. Plaintiff was employed by Defendant at its Murfreesboro long-term healthcare facility in "housekeeping" from November 18, 2009, until October 26, 2011.

7. In April of 20011, Plaintiff's adult son suffered a head/brain injury from a fall at his place of employment.

8. In an effort to help care for her injured son, Plaintiff took approximately two to three weeks of FMLA leave.

9. The significant head/brain injury suffered by Plaintiff's adult son has caused her enormous stress and grief during the months that have followed his injury.

10. During the week that began October 10, 2011, Plaintiff encountered even more emotional stress as her husband of more than three decades said that he was leaving her.

11. Due to the mental/emotional stress Plaintiff was experiencing, she was hospitalized unexpectedly for a nervous breakdown at Middle Tennessee Medical Center in Murfreesboro on Thursday, October 20, 2011, and then transferred to Parthenon Pavilion in Nashville, where she was hospitalized from Friday, October 21, 2011, through Sunday, October 23, 2011.

12. Plaintiff's treating physician while hospitalized at Parthenon Pavilion was Dr. Ahmed Iqbal Farooque.

13. Plaintiff was not scheduled to work on Friday, October 21, 2011. She was scheduled to work on Saturday, October 22, 2011, and Sunday, October 23, 2011.

2

14. Plaintiff called her employer on Friday night, October 21, 2011, and spoke to a female whose first name is "Robin" who is the head nurse for the work area to which Plaintiff was assigned.

15. Plaintiff advised "Robin" that she had suffered a nervous breakdown, was hospitalized at Parthenon Pavilion in Nashville, and would not be able to work as scheduled on Saturday and Sunday, October 22, 2011, and October 23, 2011.

16. "Robin" advised Plaintiff that she would inform Plaintiff's supervisor, John Walton, of Plaintiff's situation including her being hospitalized at Parthenon Pavilion.

17. Bearing fearful of losing her job, Plaintiff implored her treating physician/psychiatrist, Dr. Farooque, to discharge her from Parthenon Pavilion on Sunday, October 23, 2011, so that she could return to work the following day, and he complied.

18. Attached to this Complaint as Exhibit A hereto is a copy of a Medical Certificate signed by Dr. Farooque dated October 22, 2011, in which he confirmed that Plaintiff was hospitalized at Centennial Medical Center (Parthenon Pavilion) from October 21, 2011, through October 23, 2011, and that she could return to work without restrictions on October 24, 2011.

19. Plaintiff returned to work in time to commence her first shift job on October 24, 2011. She delivered the Medical Certificate marked as Exhibit A hereto to her supervisor, John Walton, and to Defendant's HR representative, Regina Riley.

20. When Plaintiff spoke with Ms. Riley on the morning of October 24, 2011, Plaintiff asked to be allowed to take FMLA leave with reference to having missed work on Saturday and Sunday, October 22, 2011, and October 23, 2011.

21. In response to Plaintiff's request to Ms. Riley to receive FMLA leave, Ms. Riley gave Plaintiff an FMLA leave form, a copy of which is attached hereto and marked as Exhibit B.

3

22. Plaintiff then proceeded to work from October 24, 2011, through October 26, 2011.

23. Toward the end of her workday on Wednesday, October 26, 2011, Plaintiff was instructed to go to Ms. Riley's office where she was informed that she was being terminated when Mr. Walton informed her: "I'm sorry but we don't need you anymore." Plaintiff became distraught and told Mr. Walton and Ms. Riley that after all she (Plaintiff) had been through, she could not believe she was being terminated. She also stated that she had asked Ms. Riley to be placed on FMLA leave and that Ms. Riley had given her the form FMLA leave document marked as Exhibit B hereto.

24. Ms. Riley stated that she had talked to the new Administrator, whose first name is "Tyler" and he had made the decision that Plaintiff would be terminated.

25. Attached hereto as Exhibit C to this Complaint is a copy of the Separation Notice prepared by Ms. Riley on behalf of the Defendant which states that Plaintiff was terminated on October 26, 2011, for violation of Defendant's absentee policy.

26. Attached hereto as Exhibit D to this Complaint is a true and exact copy of page 21 from Defendant's Employee Handbook which states Defendant's policy for unscheduled absences such as those experienced by Plaintiff on Saturday and Sunday, October 22, 2012, and October 23, 2012.

27. The last sentence of Defendant's published policy for unscheduled absences states as follows:

> <u>Any incidence that qualifies for FMLA will not count against any employee's attendance record.</u> (underlining added)

4

28. The serious illness suffered by Plaintiff that necessitated her absence from work on Saturday and Sunday, October 22, 2011, and October 23, 2011, qualified her for FMLA leave.

29. At the time Plaintiff was terminated on October 26, 2011, she still had at least five weeks of unused FMLA leave available to her.

30. As the direct and proximate result of Plaintiff's termination, she has suffered a loss of back and front pay along with the value of lost employment benefits.

31. Based upon Plaintiff's having provided Dr. Farooque's medical certificate to Mr. Walton and Ms. Riley on October 26, 2011, Plaintiff's conversation with Ms. Riley in which she requested FMLA leave, Ms. Riley's statements to her about FMLA leave, and Ms. Riley's delivering Plaintiff the form to be completed for Plaintiff's requested FMLA leave, Plaintiff reasonably believed and relied upon these statements and communications to conclude that she had a reasonable period of time to complete and return the form application for FMLA leave.

32. Neither Mr. Walton, Ms. Riley nor any other employee of Defendant requested additional medical certification or information with reference to Plaintiff's work absence on Saturday and Sunday, October 22, 2011, and October 23, 2011.

### PLAINTIFF'S FMLA ENTITLEMENT/INTERFERENCE CLAIM:

33. Plaintiff incorporates by reference and re-alleges all of the allegations made in the preceding paragraphs.

34. Plaintiff hereby asserts a cause of action pursuant to the FMLA which is codified at 29 U.S.C. §2601, et seq.

35. At times pertinent to the facts of this cause, Defendant was Plaintiff's employer for FMLA purposes because it engaged in commerce or in an industry or activity affecting

5

commerce, and because it is a public agency, as defined in 29 U.S.C. §2611(4)(A)(i)(iii) and 29 U.S.C. §203(x), and because it employed 50 or more employees for each working day for a period of several years preceding the date of Plaintiff's termination.

36. For FMLA purposes, Plaintiff was an eligible employee because at the time she requested two days of FMLA leave on October 24, 2011, she had worked more than 1,250 hours for Defendant during the preceding 12-month period, and she had unused FMLA leave available.

37. Plaintiff's mental illness/depression (breakdown) which necessitated her absence from employment on Saturday and Sunday, October 22, 2011, and October 23, 2011, constitutes a "serious health condition" for FMLA purposes, as defined at 29 U.S.C. §2611(A)(B).

38. Plaintiff's need of FMLA leave was unforeseeable and she presented medical certification of her "serious health condition" to her employer as soon as reasonably practicable under the circumstances.

39. Defendant's termination of Plaintiff on or about October 26, 2011, deprived Plaintiff of the benefits and rights to which she is entitled under the FMLA. Accordingly, the Defendant interfered with Plaintiff's rights under the FMLA pursuant to 29 U.S.C. §2614(a)(1) and §2615(a)(1). Specifically, Plaintiff was deprived of the rights specified in 29 U.S.C. §2614(a) to be restored to the position she held prior to the commencement of FMLA leave, or to an equivalent position, with equivalent employment benefits, pay, and other terms and conditions of employment.

40. The termination of Plaintiff by the Defendant on October 26, 2011, was unlawful and constitutes a prohibited act as specified at 29 U.S.C. §2615.

41. Based upon the Defendant's agents' statements and actions as set forth herein, statements in the employee handbook referenced in this Complaint, and as stated in Exhibit D

hereto, the Defendant should be equitably estopped from denying that Plaintiff was entitled to FMLA leave for Saturday and Sunday, October 22, 2011, and October 23, 2011.

42. With reference to Plaintiff's entitlement/interference with FMLA claim, she seeks the following relief:

a. A judgment for back pay and the value of employment benefits, pursuant to 29 U.S.C. §2617(a)(1);

b. Interest on back pay and the value of lost employment benefits, pursuant to 29 U.S.C. §2617(a)(II)(ii);

c. An additional amount as liquidated damages equal to the amount of back pay with interest thereon and the value of lost employment benefits, with interest thereon, pursuant to 29 U.S.C. §2617(a)(II)(iii);

d. Reinstatement by the Court to the position Plaintiff would have held had she not been wrongfully terminated, with the Court ordering that she shall receive thereafter all wages, salary, and employment benefits that she would have received had her FMLA rights not been violated;

e. Attorney's fees and reasonable costs of litigation, as provided in 29 U.S.C. §2617(a)(3); and

f. If the Court finds that reinstatement is not reasonable under the circumstances, Plaintiff requests an award of front pay for the value of lost earnings and the value of employment benefits in an amount and for a period of time determined by the Court to be equitable, but in no event for less than five years. This relief is sought pursuant to 29 U.S.C. §2617(a)(iii)(B).

## PLAINTIFF'S FMLA DISCRIMINATION/RETALIATION CLAIM:

43. Plaintiff incorporates by reference and re-alleges all of the allegations made in paragraphs 1 through 42.

44. Defendant's failure to allow Plaintiff to return to work and its discharge of her constitute retaliation for her having previously taken FMLA leave to care for her injured son, and because she attempted to take FMLA leave following her hospitalization at Middle Tennessee Medical Center in Murfreesboro on Thursday, October 20, 2011, and at Parthenon Pavilion in Nashville from Friday, October 21, 2011, through Sunday, October 23, 2011. Her termination also constitutes discrimination in that she was treated differently than similarly situated employees of the Defendant who had not received or requested FMLA leave.

45. This claim arises from 29 U.S.C. §2615(a)(2) and §2615(b) which prohibit employers from discharging or discriminating against an employee who has availed herself of rights pursuant to the FMLA.

46. As the direct and proximate result of Defendant's retaliatory and discriminatory discharge of Plaintiff, resulting from her assertion of FMLA rights, she has suffered actual damages for which she seeks the same relief as was specified in paragraph 42 of this Complaint with reference to her entitlement/interference claim.

Respectfully submitted,

R. STEVEN WALDRON, BPR #2767
Attorney for Plaintiff
WALDRON, FANN & PARSLEY
202 W. Main Street
Murfreesboro, TN 37130
(615) 890-7365

8